IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TROY ADAM SHADE,** | : | CIVIL ACTION NO. 3:19-CV-733 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **STANLEY STANISH, DONALD J. O'BRIEN, PAM SMITH, LAURA BANTA, BERNADETTE MASON, JOSEPH SILVA, PAUL NOEL, KIMBERLEE DRUM, DIANE KASHMERE, MICHAEL WENERWICZ, JOHN E. WETZEL,** | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Troy Adam Shade ("Shade"), an inmate formerly housed at the State Correctional Institution at Retreat, initiated this action by filing an "Order to Show Cause and Motion for Temporary Restraining Order and Preliminary Injunction and/or Other Immediate Extraordinary Relief." (Doc. 1). For the reasons set forth below, the court will deny the motion and order Shade to show cause why this action should not be dismissed for failure to file a complaint.

### I.    Factual Background & Procedural History

Shade's request for injunctive relief stems from the medical care he received at SCI-Retreat for his eye and skin conditions. (Doc. 1). He filed the instant preliminary injunction against Dr. Stanley Stanish, Donald J. O'Brien, PA-C (together, the "medical defendants"), Pam Smith, Laura Banta, Bernadette Mason, Joseph Silva, Paul Noel, Kimberlee Drum, Diane Kashmere, Michael Wenerwicz,

and John Wetzel (collectively, the "DOC defendants"). While Shade describes the medical defendants' alleged role in these events, he fails to set forth any factual allegations against the DOC defendants. (See id.)

Shade alleges that the medical defendants, in retaliation for Shade filing grievances and request slips, are acting with reckless disregard to his serious medical needs by attempting to coerce him into believing that he has glaucoma and attempting to force him to administer four different prescription eye drops. (Doc. 1 ¶¶ 16, 17, 21, 23-25, 28). Shade does not believe that he has glaucoma and asserts that his elevated ocular pressure is the result of a silicone oil bubble in his left eye. (Id. ¶ 24). He further alleges that the medical defendants are colluding with ophthalmologist Dr. Scott Hartzell. (Id.) Shade asserts that the medical defendants have taken away three of his keep-on-person medications and accused him of not complying with his medications. (Id. ¶¶ 22-24). He also asserts that the medical defendants provided him with eye drops other than those recommended by a specialist and have unnecessarily prescribed eye drops for his right eye. (Id. ¶¶ 22, 27).

Shade next alleges that the medical defendants refused to adequately treat his chronic skin condition and charged him for medication and sick call visits, which caused scars on his body. (Id. ¶¶ 37, 45, 47). Shade states that defendant O'Brien prescribed sensitive soap and skin lotion in 2014, but they were not effective. (Id. ¶ 38). He alleges that the medical defendants failed to prescribe peroxide wash and antibiotics that were recommended by a dermatologist. (Id. ¶¶ 40, 44). In May 2018, defendant O'Brien stopped prescribing the sensitive skin

soap. (Id. ¶ 46). Shade is allergic to the soap provided by the DOC and the alternative baby soap is not sufficient and caused an eye infection. (Id. ¶¶ 48, 49). Although the medical defendants informed Shade that he can purchase medications through the prison commissary, Shade submits that he cannot afford commissary because he spends his money on litigation. (Id. ¶ 48).

Shade seeks an order preventing defendants from forcing him to administer multiple eye drops in his left eye, corroborating with an ophthalmologist, and forcing him to sign the DC-462 refusal form every week, and compelling defendants to return his medication as keep-on-person, to schedule an examination with an eye specialist, and to treat his skin condition. (Id. ¶¶ 31-34, 36, 51-53). The court finds that Shade cannot meet the heavy burden of establishing that temporary or preliminary injunctive relief is warranted.

## II.  Legal Standard

Inmate *pro se* pleadings which seek emergency relief in the form of preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure. Preliminary injunctive relief is "an extraordinary remedy" and "should be granted only in limited circumstances." Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (citing AT&T v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1426-27 (3d Cir. 1994)). In determining whether to grant a motion seeking preliminary injunctive relief, the court considers the following four factors: (1) the likelihood that the movant will prevail on the merits; (2) the extent to which the movant is being irreparably harmed by the challenged conduct; (3) the extent to which the non-moving party will suffer irreparable harm if the preliminary

injunction is issued; and (4) whether granting preliminary injunctive relief will be in the public interest.  S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992) (citing Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197-98 (3d Cir. 1990)).  The Third Circuit recently clarified this standard.  See Reilly v. City of Harrisburg, 858 F.3d 173 (3d Cir. 2017).  As a threshold matter, the movant must establish the two "most critical" factors: likelihood of success on the merits and irreparable harm.  Id. at 179.  Under the first factor, the movant must show that "it can win on the merits," which requires a showing that is "significantly better than negligible but not necessarily more likely than not."  Id.  Under the second factor, the movant must establish that it is "more likely than not" to suffer irreparable harm absent the requested relief.  Id.  Only if these "gateway factors" are satisfied may the court consider the third and fourth factors and "determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief."  Id. at 176, 179.

**III.   Discussion**

    **A.   Likelihood of Success on the Merits**

To establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention."  Monmouth Cnty. Corr. Institutional Inmates

4

v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (citation omitted). A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. See Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); see also McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

For purposes of the instant matter, we assume that Shade's various ailments present serious medical needs. We conclude that Shade has not established any of the defendants acted with the requisite deliberate indifference to his serious medical needs. The medical records reveal that Shade has been diagnosed with glaucoma by three different ophthalmologists. In 2016, Dr. Thomas Sharkey, an ophthalmologist at Eye Care Specialists, diagnosed Shade with glaucoma. (Doc. 26-1 at 1-6). Since that diagnosis, the prison's glaucoma clinic has monitored Shade's intraocular pressures. (See Doc. 26-1). In May 2017, Shade was transported to Geisinger Medical Center for surgery to remove suspected silicone oil in the left

5

eye. (Doc. 1 ¶ 30; Doc. 26-1 at 18-19). Dr. Sachin Patel noted that, in addition to a history of retinal detachment, Shade also had a history of advanced glaucoma in the left eye. (Id.) In April 2019, Shade was transported to an outside retinal specialist for a second opinion with Dr. Joshua Hedaya. (Doc. 26-1 at 270; Doc. 26-5 at 363-368). Dr. Hedaya opined that Shade had glaucoma in both eyes and he suspected ocular hypertension. (Doc. 26-5 at 363, 367). A third specialist, ophthalmologist Dr. Hale, also confirmed that Shade has glaucoma. Each of these specialists recommended that Shade use eye drops to control his glaucoma and have advised Shade of the risk of losing his vision if he fails to take his medications. (Doc. 26-1 at 18-19, 270; Doc. 26-5 at 363-368).

With respect to his skin condition, Shade acknowledges that he was provided various medications and skincare products and has been consistently treated for his chronic skin condition. (Doc. 1 ¶¶ 38, 42, 44-46, 48-50).

Defendants maintain that they have a medical and ethical responsibility to continue prescribing and offering medication to Shade, though they have never forced him to take his medications. Furthermore, the medical defendants have advised Shade that discontinuing his glaucoma medication will result in blindness, and they have repeatedly educated Shade about glaucoma and the risks of noncompliance with medication. It is clear that Shade has access to medication but refuses to take prescribed medication. It is also clear that he has received extensive treatment for his eye and skin conditions. Shade's conduct is construed as a medication refusal and disagreement with a particular course of treatment, which are not grounds for a deliberate indifference to serious medical needs claim. See

6

Brown v. Rozum, 453 F. App'x 127 (3d Cir. 2011) (nonprecedential) (acceptance of an inmate's refusal of medication does not state a claim for deliberate indifference); Thomas v. Dragovich, 142 F. App'x 33, 36 (3d Cir. 2005) (nonprecedential) ("mere disagreement as to the proper medical treatment" is insufficient to establish a constitutional violation) (citing Monmouth Cnty., 834 F.2d 326 at 1987). Accordingly, we find that Shade has not established a reasonable likelihood of success on the merits of an Eighth Amendment medical care claim. See, e.g., Crews v. Beaven, No. 07-2217, 2010 WL 3632144, at *11 (M.D. Pa. Sept. 10, 2010) (holding that the prisoner's refusal to comply with security procedures in connection with the distribution of medication is equivalent to a "medication refusal" and does not constitute deliberate indifference to that prisoner's medical needs).

### B.   Irreparable Harm

Irreparable injury is harm of such an irreversible character that prospective judgment would be "inadequate" to make the moving party whole. See Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997); Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). An injunction will not issue "simply to eliminate a possibility of a remote future injury . . . " Acierno v. New Castle County, 40 F.3d 645, 655 (3d Cir. 1994) (citations omitted). Shade has not presented any evidence that he will suffer irreparable harm by the denial of the injunction. On the contrary, if the court orders defendants to discontinue Shade's glaucoma medication, defendants have presented evidence that he will eventually go blind. Thus, the court finds that Shade has not shown an immediate, irreparable harm justifying a preliminary injunction. Because Shade failed to "demonstrate *both* a

7

likelihood of success on the merits and the probability of irreparable harm if relief is not granted," the motion must be denied.  Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989) (emphasis in original) (quoting Morton v. Beyer, 822 F.2d 364, 367 (3d Cir. 1987)); see also Reilly, 858 F.3d at 179 (the first two preliminary injunction factors are the "most critical," and are considered the "gateway factors" before the third and fourth factors).

## IV. Conclusion

We will deny Shade's motion for a preliminary injunction as Shade has failed to meet his burden of proof on the first two "gateway" elements for injunctive relief. Moreover, we note that Shade's only pleading in this action to date is his motion for preliminary injunction.  Without the filing of a complaint, the court is unable to determine whether Shade has stated a plausible claim for relief.  See FED. R. CIV. P. 3 ("A civil action is commenced by filing a complaint with the court."); FED. R. CIV. P. 8(a)(2) (a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); see also 28 U.S.C. § 1915(e)(2). Accordingly, the court will order Shade to show cause why this action should not be dismissed for failure to file a complaint.  An appropriate Order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     November 24, 2021